1

2

3

4

5

6                         UNITED STATES DISTRICT COURT

7                              DISTRICT OF NEVADA

8                                     * * *

9    HAROLD WILLARD,                        Case No. 3:11-cv-00876-MMD-WGC

10                        Petitioner,                    ORDER

11        v.

12   RENEE BAKER, et al.,

13                        Respondents.

14

15        This habeas matter comes before the Court on a *sua sponte* inquiry into whether

16   the petition is time-barred because it was not filed within the one-year limitation period

17   in 28 U.S.C. § 2244(d)(1).  This order follows upon an earlier show cause order (dkt. no.

18   5) and petitioner's response (dkt. nos. 6 & 9) thereto.

19   **I.       BACKGROUND**

20        Petitioner Harold Willard challenges his Nevada conviction, pursuant to a guilty

21   plea, of sexual assault.

22        Petitioner has not challenged the procedural history recited in the show-cause

23   order, which was based upon the allegations of the petition as well as information

24   subject to judicial notice from the online records of the state supreme court.

25        The judgment of conviction was filed on November 29, 2004.   No notice of

26   appeal was filed, and the time to do so expired on December 29, 2004.

27        Nearly two years later, on or about September 18, 2006, petitioner filed a state

28   post-conviction petition.   The state district court denied the petition, and the state

1  supreme court affirmed, in No. 54885. The Supreme Court of Nevada held in a
2  December 10, 2010, order of affirmance that the petition was untimely.  The remittitur
3  later issued on April 4, 2011.

4      On or after November 8 , 2011, petitioner mailed the federal petition to the Clerk
5  of this Court for filing.[1]

6      Willard maintains that he was born on March 28, 1988.[2]  Petitioner, accordingly,
7  would have been 16 years old at the time of the judgment of conviction, 18 years old at
8  the time of the filing of the state petition, and 23 years old when the state supreme court
9  issued the remittitur in April 2011.

10      As discussed further, *infra*, petitioner refers to case law holding that sentencing a
11 juvenile to life without the possibility of parole for a nonhomicide offense violates the
12 Eighth Amendment.  However, petitioner was sentenced on November 29, 2004, to life
13 with the possibility of parole after ten (10) years, with 233 days credit for time served.
14 He thus potentially would be eligible for consideration for parole in approximately April
15 2014, *i.e.*, potentially in less than a year from the decision herein.[3]

16 **II.   DISCUSSION**

17      Pursuant to *Herbst v. Cook*, 260 F.3d 1039 (9th Cir. 2001), the Court *sua sponte*
18 has raised the question of whether the petition is time-barred for failure to file the
19 petition within the one-year limitation period in 28 U.S.C. § 2244(d)(1).

20      **A.    Calculation of the Federal Limitation Period as Applied to this Case**

21      Under 28 U.S.C. § 2244(d)(1)(A), the federal one-year limitation period, unless
22 otherwise tolled or subject to delayed accrual, begins running after "the date on which

23

24   [1]*See* dkt. no. 3, at 1. Given the approximately thirty (30) days that elapsed
25 between the date of mailing stated in the papers and the docketing of the papers by the
   Clerk, the Court makes no definitive factual finding that the federal papers in fact were
26 tendered for mailing in the prison through the proper channels on November 8, 2011.
   The thirty (30) days in question do not affect the outcome herein.

27   [2]*See* dkt. no. 9, Exh. 10 (at electronic docketing page 136)(copy of birth
   certificate).

28   [3]*See* dkt. no. 9, Exh. 1, at 13-14 (at electronic docketing pages 40-41).

2

the judgment became final by the conclusion of direct review or the expiration of the time for seeking such direct review."  In the present case, the limitation period therefore began running after the time period expired for filing a direct appeal, *i.e.*, after December 29, 2004.  Absent tolling or delayed accrual, the one-year limitation period expired on December 29, 2005.

Under 28 U.S.C. § 2244(d)(2), the federal limitation period is statutorily tolled during the pendency of a properly filed application for state post-conviction relief or for other state collateral review.  However, it does not appear that, absent other tolling or delayed accrual, petitioner's September 18, 2006, state petition would render his federal petition timely, for two reasons.  First, absent other tolling or delayed accrual, the federal limitation period already had expired nearly nine months earlier, on December 29, 2005. Second, an untimely state petition is not properly filed for purposes of statutory tolling under § 2244(d)(2).  *See Pace v. DiGuglielmo*, 544 U.S. 408 (2005).

Accordingly, absent other tolling or delayed accrual, the federal limitation period expired on December 29, 2005. The federal petition in this matter was not mailed for filing until on or about November 8, 2011, nearly six years after the federal limitation period had expired, absent other tolling or delayed accrual. The petition thus is untimely on its face.

### B.    Equitable Tolling

Equitable tolling is appropriate only if the petitioner can show that: (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing. *Holland v. Florida*, 130 S.Ct. 2549, 1085 (2010). Equitable tolling is "unavailable in most cases," *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir.1999), and "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule," *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir.2002) (*quoting United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir.2000)). The petitioner ultimately has the burden of proof on this "extraordinary exclusion." 292 F.3d at 1065. He accordingly must demonstrate a causal relationship between the extraordinary

3

1    circumstance and the lateness of his filing. *E.g., Spitsyn v. Moore*, 345 F.3d 796, 799

2    (9th Cir. 2003).  *Accord Bryant v. Arizona Attorney General*, 499 F.3d 1056, 1061 (9th

3    Cir. 2007).

4           In his show-cause response, petitioner asserts that defense counsel never filed a

5    direct appeal despite petitioner having paid him to do so.[4]  He attaches a September 26,

6    2006, affidavit by his mother, Peggy Willard-Ross, which apparently was submitted to

7    the state district court in the state post-conviction proceedings.  Ms. Willard-Ross attests

8    in pertinent part that: (1) at the outset of the case, "[i]t was agreed that [defense

9    counsel] would represent my son in the pending case and throughout the appeals

10   process;" (2) after the sentencing, Willard's parents tried to contact defense counsel "to

11   no avail," and Willard "tried also, but his calls were not accepted;" (3) Willard's letters

12   requesting that an appeal be filed "were unanswered;" (4) "[f]inally," at some time

13   unspecified in the affidavit, they were informed by Willard that defense counsel had

14   responded and told him "that no appeal had been filed, nor would be filed because" the

15   plea agreement "revoked his rights to an appeal;" (5) at some unspecified point

16   thereafter, Ms. Willard-Ross met with a professor involved with the American Civil

17   Liberties Union (ACLU) and submitted a complaint form to the ACLU; (6) "[a]fter about 6

18   months," Ms. Willard-Ross contacted the professor again and was informed that the

19   ACLU would not become involved in the matter; (7) "[a]s soon as it was possible," at

20   some unspecified point thereafter, Ms. Willard-Ross informed Willard that the ACLU

21   would not become involved, and based upon advice "[t]hrough other friends" they

22   advised Willard to file a state petition.[5]

23   ///

24   _____

25        [4]Dkt. no. 9, at 2 & 17 (at electronic docketing pages 5 & 20).

26        [5]*Id.*, Ex. 2, at 1-4 (at electronic docketing pages 45-48).  *See also id.*, Ex. 3, at
     electronic docketing page 59 ("When Harold wrote the attorney, he said that there were
     no appeal rights, Harold was prohibited from filing an appeal.  He does not respond to
27   Harold's letters.").  The remaining exhibits referenced in connection with this argument
     in the show-cause response – Exhibits 1, 4 & 5 – contain no factual assertions pertinent
28   to a possible claim of equitable tolling based upon a failure to file a direct appeal.

1    These alleged circumstances do not present a potentially viable basis for

2    equitable tolling.

3    Even assuming that defense counsel failed to pursue a direct appeal, such failure

4    does not establish, in and of itself, that an extraordinary circumstance thereafter stood

5    in the way of and prevented the petitioner *from filing a federal petition. See, e.g., Randle*

6    *v. Crawford*, 604 F.3d 1047, 1057-58 (9th Cir. 2010) (counsel's failure to file a direct

7    appeal did not prevent the petitioner from filing a federal petition and simply meant that

8    the petitioner had a year from the expiration of the time for filing a direct appeal to do

9    so).

10   Petitioner otherwise presents no facts that potentially would give rise to equitable

11   tolling in connection with defense counsel not pursuing a direct appeal.  In this regard,

12   the show-cause order clearly informed petitioner that all assertions of fact must be

13   detailed and specific as to time and place and that the Court would not consider any

14   assertions of fact that were not specific as to time and place.[6]  Nothing in petitioner's

15   submission reflects that defense counsel informed him or led him to believe after the

16   sentencing, following a guilty plea, that he would be filing an appeal or in fact ever had

17   filed an appeal.  None of the factual assertions presented provide a basis for petitioner

18   having had a reasonably objective belief that a direct appeal was pending at any point.

19   Petitioner instead maintains that counsel initially would not respond to his inquiries and

20   then told him at some unspecified time that he was not going to file an appeal.

21   Affording petitioner every possible benefit of the doubt based upon the vague

22   time line in the Willard-Ross affidavit, defense counsel clearly informed Willard that no

23   appeal would be filed well before the 2006 state petition and thus multiple years prior to

24   the filing of the federal petition.  The fact that defense counsel did not file a direct appeal

25   therefore cannot constitute an extraordinary circumstance that stood in the way and

26   ///

27

28   _____

     [6]Dkt. no. 5, at 4-5.

prevented petitioner from filing a federal petition during the multiple years that intervened.[7]

Petitioner further contends that he is "automatically" entitled to relief because he allegedly was not informed of his right to appeal, relying upon *Gaeta v. United States*, 921 F.Supp. 864 (D. Mass. 1996).[8]  The district court decision in *Gaeta*, which is not binding precedent in other federal district courts, was applying Rule 32(a)(2) of the Federal Rules of Criminal Procedure, which does not apply in Nevada state court. Moreover, petitioner acknowledged in the guilty plea agreement that he had been informed of his limited appeal rights following the plea, which were outlined in the plea agreement.[9]  Furthermore,  alternative pleading notwithstanding, one cannot prove as a matter of actual fact both that one was unaware of one's right to appeal but that one nonetheless was requesting defense counsel to pursue an appeal.  In all events, any purported failure of the state district court to inform petitioner of his right to appeal did not cause his failure to file a timely federal petition.  The state district court was under no constitutional obligation to advise petitioner as to any and all state and federal post-conviction remedies that he thereafter might pursue.

The Court further has considered the fact that petitioner was a juvenile when the judgment of conviction was entered.  Any tolling effect from his minority, however, whether viewed in isolation or in conjunction with other factors, would have ended when he turned 18 on or about March 28, 2006, more than five years before the filing of the federal petition.[10]

---

[7]The Court notes in passing that the state courts rejected petitioner's reliance upon defense counsel's failure to file an appeal as a basis for overcoming the untimeliness of the state petition.  Willard was represented by counsel in the post-conviction proceedings in both the state district court and state supreme court.  *See* dkt. no. 5-1 (state supreme court decision); dkt. no. 9, Ex. 6 (merits filing by counsel in state district court).

[8]Dkt. no. 9, at 6-7 (at electronic docketing pages 9-10).

[9]*Id.*, Ex. 7, at 3-4 (at electronic docketing pages 87-88).

[10]The Court is addressing the potential impact of petitioner's minority on the tolling analysis only on an *arguendo* basis and only with regard to the application of the federal limitation period.  The fact that petitioner turned 18 more than five years before
*(fn. cont...)*

1    Finally, the fact that petitioner filed a state petition in September 2006 sharply

2    cuts against any argument that he was prevented by some factor or factors from filing a

3    federal petition at and after that time. It has been established law since the 2005

4    decision in *Pace, supra,* that an untimely state petition does not statutorily toll the

5    running of the federal limitation period. A petitioner therefore does not act either

6    reasonably or diligently in waiting for the conclusion of proceedings on a facially

7    untimely state petition to seek federal habeas relief.  *See* 544 U.S. at 416-17.  Here,

8    even if, assuming some factor or factors stood in the way of petitioner filing a federal

9    petition prior to September 2006, the filing of the state petition at that time reflects an

10   ability to file a petition seeking post-conviction judicial relief.

11   Petitioner accordingly has not presented a potentially viable basis for equitable

12   tolling in response to the show-cause order.

13   **C.    Actual Innocence Exception**

14   The Supreme Court's recent decision in *McQuiggin v. Perkins*, 133 S.Ct. 1924

15   (2013), held that an equitable exception to 28 U.S.C. § 2244(d)(1) exists under which a

16   petitioner may overcome the untimeliness of a federal petition on a showing of actual

17   innocence satisfying the standard set forth in *Schlup v. Delo*, 513 U.S. 298 (1995).

18   *Perkins* thus confirms that the governing law stated previously in the show-cause

19   order remains applicable herein:

20   . . . [I]f petitioner seeks to avoid application of the time-bar based
     upon a claim of actual innocence, he must come forward with new reliable

21   evidence tending to establish his innocence, *i.e.*, tending to establish that
     no juror acting reasonably would have found him guilty beyond a

22   reasonable doubt, as to all of the charges pending against him in the case
     prior to the plea. *See House v. Bell*, 547 U.S. 518, 126 S.Ct. 2064, 165

23

24   _____

     *(…fn. cont.)*

25   the filing of the federal petition leads to the conclusion that any effect of his minority
     prior to that time ultimately has no material impact on the equitable tolling analysis. The

26   Nevada Supreme Court's holding that the state petition was untimely under state law on
     the record presented to the state courts is the end of the matter with regard to the

27   application of state law. *Cf. Pace*, 544 U.S. at 415 ("end of the matter" vis-à-vis statutory
     tolling). The Nevada Supreme Court is the final arbiter of the application of Nevada

28   state law.

L.Ed.2d 1 (2006); *Bousley v. United States*, 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); *Lee v. Lampert*, 653 F.3d 929 (9th Cir. 2011)(*en banc*).

Dkt. no. 5, at 4.

In order to satisfy the *Schlup* actual innocence gateway, the evidence need not be newly discovered, but it must be "newly presented." *See Griffin v. Johnson*, 350 F.3d 956, 961-63 (9th Cir. 2003). In this regard, "actual innocence" means actual factual innocence, not mere legal insufficiency. *See, e.g., Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). The court "must assess the probative force of the newly presented evidence in connection with the evidence of guilt," and the court "may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence." *Schlup*, 513 U.S. at 332.

The materials submitted by petitioner include a declaration of probable cause executed by the investigating officer, pursuant to a declaration under penalty of perjury. The declaration reflects that the State would have presented evidence tending to establish the following if Willard had not entered a guilty plea and the case instead had gone to trial before a jury.[11]

According to the March 31, 2004, report of the then fifteen year-old victim, Willard sexually assaulted him on two different occasions, on March 29, 2004, and March 30, 2004.

The victim related that on March 29, 2004, he went to Willard's residence to check on him because Willard had said that he did not feel well. When he arrived, however, Willard ordered him to undress and subjected him to forced anal and oral sex. According to the victim, Willard had told him that he was the leader of the Aryan

---

[11]Dkt. no. 9, Ex. 4 (at electronic docketing pages 61-67). The Court makes no credibility findings or other factual findings regarding the truth or falsity of evidence or statements of fact in the state court. The Court summarizes these facts solely as background to the issues presented, and it does not summarize all such material. No statement of fact made by the Court in describing factual assertions in the state courts constitutes a finding of fact by this Court. In this instance, the Court merely summarizes the allegations of the officer and complaining witness to provide context for petitioner's showing seeking to establish actual innocence under the *Schlup* standard.

Brotherhood, and he knew Willard to have a tendency toward violence.  Willard had a large knife on him and also possessed several rifles, so the victim feared for his safety if he did not comply.

According to the victim, the next day, March 30, 2004, a second suspect, a sixteen year-old schoolmate, accompanied the victim back to Willard's house.  Willard had been told by the second suspect that the victim had told him about the incident from the day before.  The victim again was subjected to forced sexual acts.  This time the second suspect was holding a .22 caliber rifle, and Willard instructed him to shoot the victim "if he tried anything funny."  During the incident, Willard also simulated loading a shotgun at one point, pointed the shotgun at the victim, and pulled the trigger.   In addition to the forced sexual acts, Willard further took the victim into the backyard naked and hit him with bicycle break cables, placed duct tape on the victim's mouth and ripped it off, and then did the same thing to his pubic area.

After the second suspect left, Willard again subjected the victim to oral and anal sex.  He then told the victim that he wanted two 9 mm pistols "for gang purpose."  He told the victim that he would kill him if he did not comply, and he beat the victim again with a make-shift whip before the victim left.

The officer interviewed the second suspect on the evening of March 31, 2004, after giving the second suspect *Miranda* warnings and with his mother present.  According to the officer's declaration, the second suspect "corroborated most of the details of the second day incident."

The officer also interviewed Willard, after giving him *Miranda* warnings and receiving permission from his mother.  Willard stated that the victim wanted to become a member of his organization, which required that he be initiated by being beaten up and then sexually assaulted.  According to Willard, he asked the victim who he wanted to perform the sexual assault portion of the initiation, and the victim told him that he wanted Willard to do it.  According to Willard, he had to repeat the sexual assault the

///

1 second day because the first initiation had been "voided" because the victim had told
2 the second suspect about the incident.

3 Willard initially was booked on two counts of sexual assault, assault with a deadly
4 weapon, and false imprisonment.

5 In his show-cause response, petitioner asserts that: (a) the victim and the second
6 suspect lied; (b) the victim lied initially because the detective told him that he would be a
7 "fag" unless he said that Willard raped him; (c) the victim told "several people" that he
8 subsequently went to the police to retract his statement but the police persuaded him to
9 not change his  story – with petitioner stating at some points in the response that the
10 police did so by promising the victim a computer with internet access and at others that
11 the police did so by telling the victim that he would be charged with perjury if he
12 recanted; and (d) Willard and the victim instead were mutually voluntarily experimenting
13 with homosexuality, with no weapons being used to intimidate the victim.[12]

14 Petitioner relies upon two documents attached with the show-cause response to
15 corroborate this account.  The two documents do not constitute reliable evidence
16 satisfying the narrow actual innocence gateway under *Schlup*.

17 First, petitioner relies upon passages from the sentencing transcript reflecting
18 that the State sought restitution at sentencing in an amount of $1,000.00 so that the
19 victim could get a computer.  The State maintained that the victim had been unable to
20 go back to the same school and wanted the computer to help with his studies at a
21 charter school.[13] Nothing in the fact that the State sought restitution for this purpose
22 supports petitioner's assertion that the police used a promise of a computer with internet
23 access to persuade the victim to not recant.  The simple act of the prosecution seeking
24 restitution, on the record, at sentencing in a particular amount for a particular purpose

25 ───────────
[12]Dkt. no. 9, at 1-2, 7-9, 15-18 & 20 (at electronic docketing pages 4-5, 10-12, 18-
26 21 & 23).

27 [13]Dkt. no. 9, Ex. 1, at 5-6 & 12 (at electronic docketing pages 32-33 & 39).  As
the state district court noted at the time, the restitution request largely was "symbolic"
given that, "I could order all the restitution in the world, and it's not going to be paid."
28 The court did not order any restitution.

does not remotely call the guilt of a defendant being sentenced on a guilty plea into question.  Even if the fact that the State sought such restitution at the November 29, 2004, and assuming sentencing constituted "new" evidence under *Schlup*, such a fact does not tend to establish that no juror acting reasonably would have found petitioner guilty beyond a reasonable doubt, as to all charges pending against him before his plea.

Second, petitioner relies upon "Exhibit 8," a letter "from a friend of Petitioner" that he describes variously as having been received a few months before the response and being from 2007.[14]

Petitioner attaches as Exhibit 8 an undated, unauthenticated handwritten letter from "Chelsea Rae Lavender," which reads in full as follows:

> Hey Harold
>
> I just wanted to say hi + see how you are.  Im [sic] fine I just got done with other [sic] final we get out the 10th.  I herd [sic] that [victim's name] went to the cops + said that you didn't do it.  I went by the preson [sic].  Well, Crystal just [illegible] by hanging all over Edward.  I thought that you + her were enged [sic] + Tracy baby was telling you the truth.
>
> Well if you want to right [sic] me back send it to [illegible] or me.
>                                             [return address omitted]
>                     Talk to you later
>                     /s/ Chelsea Lavender

Dkt. no. 9, Ex. 8, (at electronic docketing pages 100-01).

A purported unauthenticated letter by a friend of the petitioner that she "herd" that the victim went to the police and said that "he didn't do it" does not constitute reliable evidence tending to establish that no juror acting reasonably would have found him guilty beyond a reasonable doubt.  The letter itself would not even be admissible at a trial, and Ms. Lavender would not be allowed to testify as to what she heard from someone about the victim going to the police. An actual recantation by the victim established by competent evidence perhaps would be one thing.  An alleged letter by a friend of petitioner as to what she heard that the victim did is quite another.  Nor does

---

[14]Dkt. no. 9, at 8-9 &16-17 (at electronic docketing pages 11-12 & 19-20 ).

1    the letter even begin to support the intricate story related in petitioner's show-cause

2    response as to why the victim allegedly lied initially and then later allegedly did not go

3    through with a recantation.  The Court thus is left with a wholly self-serving account by a

4    convicted felon facing a life sentence with the possibility of parole that is not supported

5    by any competent corroborating evidence.  Such is not the stuff of which a showing

6    satisfying the narrow *Schlup* actual innocence gateway is made.  Petitioner has not

7    presented reliable evidence tending to establish that no juror acting reasonably would

8    have found him guilty beyond a reasonable doubt, as to all charges pending at the time

9    of his guilty plea.[15]

10    Petitioner, accordingly, has not presented reliable evidence tending to establish a

11    viable basis for application of an equitable exception to the federal limitation period

12    based upon actual innocence.[16]

13    **D.    Remaining Arguments**

14    Petitioner's remaining arguments in the main pertain to the merits and thus beg

15    the question of whether the petition must be dismissed with prejudice as untimely.

16    Petitioner contends, *inter alia*, that a "jurisdictional" defect occurred between the

17    juvenile court and the state district court.  He cites Nevada state law authorities for the

18    ///

---

19
20    [15]The Court would note, strictly in passing, that, over and above Willard's admission of guilt in entering a guilty plea, petitioner stated at his sentencing:

21    . . . . I made a big one [mistake], and now I have to pay.  I will do my time for it, and I'm sorry that I did it.  I'm
22    sorry to my victim . . . .

    Dkt. no. 9, Ex. 1, at 13 (at electronic docketing page 40).

23    None of the remaining materials filed with the show-cause response
24    substantiate petitioner's claim of actual innocence.  His mother sought to raise a number of issues in her affidavit and ACLU complaint with the proceedings leading to
25    her son's guilty plea.  However, the mother obviously had no direct personal knowledge bearing on his guilt or innocence.  Indeed, Ms. Willard-Ross stated expressly in the
26    ACLU complaint: "We are not saying that Harold is innocent.  I am not sure what occurred."  Dkt. no. 9, Ex. 3, at electronic docketing page 58.

27    [16]The show-cause order clearly informed petitioner that he must present competent evidence supporting all of his factual assertions and that unsupported
28    assertions of fact would be disregarded.  Dkt. no. 5, at 4-5.

proposition that a lack of subject matter jurisdiction may not be waived.[17]   However, whether or not an alleged state law procedural error purportedly is "jurisdictional" has nothing to do with the application of the one-year federal limitation period.  Petitioner's state law citations regarding a lack of jurisdiction not being subject to waiver have no relevance to the application of the federal limitation period.  Moreover, the Supreme Court of Nevada specifically held that petitioner "failed to demonstrate that the district court was without jurisdiction," citing related state statutes.[18]  The state supreme court is the final arbiter of Nevada state law.

Petitioner further refers extensively to the holding in *Graham v. Florida*, 130 S.Ct. 2011 (2010), that sentencing a juvenile to life without the possibility of parole for a nonhomicide offense violates the Eighth Amendment.  However, petitioner was sentenced in 2004 to life *with* the possibility of parole after ten (10) years.[19]   *Graham* thus has no potential bearing on the propriety of applying the one-year federal limitation period in this case based on a premise that petitioner was subjected to a categorically prohibited punishment under the Constitution.  As the Supreme Court stated at the conclusion of its *Graham* opinion:

> The Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide.  A State need not guarantee the offender eventual release, but if it imposes a sentence of life it must provide him or her with some realistic opportunity to obtain release before the end of that term. . . .

130 S.Ct. at 2034.  Here, Willard was sentenced to a life with parole sentence that, as imposed, provided a realistic opportunity to obtain release on parole, in this instance after ten (10) years served.   *Graham* has nothing to do with the application of the federal one-year limitation period in this case.

The petition accordingly will be dismissed with prejudice as untimely.

///

---

[17]Dkt. no. 9, at 13 (at electronic docketing page 16).

[18]Dkt. no. 5-1, at 2 n.2.

[19]See text, *supra*, at 2.

1    **III.    CONCLUSION**

2         IT IS THEREFORE ORDERED that the petition shall be DISMISSED with

3    prejudice as time-barred.

4         IT IS FURTHER ORDERED that a certificate of appealability is DENIED.  Jurists

5    of reason would not find debatable or wrong the district court's dismissal of the petition

6    as untimely, for the reasons discussed herein.  The federal petition was filed in 2011,

7    nearly six (6) years after the 2005 expiration of the federal limitation period, absent

8    tolling or delayed accrual.  *See* text, *supra*, at 1-3.  With regard to equitable tolling, the

9    fact that defense counsel did not file a direct appeal following the 2004 judgment of

10   conviction on a guilty plea did not establish a basis for tolling for the multiple years that

11   followed.  Petitioner's show cause response reflects that counsel never gave petitioner

12   reason to believe that he was pursuing a direct appeal and further that counsel clearly

13   informed petitioner that he was not doing so years before the federal petition was filed.

14   *See* text, *supra*, at 3-7.  With regard to actual innocence, petitioner's alleged showing

15   consists principally of petitioner's self-serving assertions together with a friend's

16   purported letter stating that she allegedly heard that the victim later went to the police

17   and said that petitioner did not do the crime.  Such a showing does not constitute

18   reliable evidence satisfying the narrow *Schlup* actual-innocence gateway.  *See* text,

19   *supra*, at 7-12.  Petitioner's remaining arguments go to the merits and thus beg the

20   question.  Petitioner's reliance on the holding in *Graham* regarding sentencing of a

21   juvenile to life without parole has nothing to do with this case because petitioner was

22   sentenced to life *with* the possibility of parole after ten (10) years.  *See* text, *supra*, at 2

23   & 12-13.

24        IT IS FURTHER ORDERED that, pursuant to Rule 4 of the Rules Governing

25   Section 2254 Cases, the Clerk shall provide a copy of this order and the judgment to

26   respondents by effecting informal electronic service upon Catherine Cortez Masto as

27   per the Clerk's current practice and shall regenerate notices of electronic filing for the

28   ///

1    prior filings.  No response is required from respondents, other than to respond to any

2    orders of a reviewing court.

3         The Clerk of Court shall enter final judgment accordingly, in favor of respondents

4    and against petitioner, dismissing this action with prejudice.

5         DATED THIS 16th day of July 2013.

6

7

8                                              _____
                                               MIRANDA M. DU
9                                              UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28